NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
MELCHOR R. JAYME, :
:
Plaintiff, :
: Civil Action No. 07-55 (GEB)
v. :
: **MEMORANDUM OPINION**
MCI CORPORATION, :
GERALD B. CATZ, President, :
ANDREA BUSCH, Executive Staff, :
:
Defendants. :
_____:

**BROWN, Chief Judge**

      This matter comes before the Court upon the motion of Defendants MCI Corporation ("MCI"), Gerald B. Catz, and Andrea Busch (collectively "Defendants") to dismiss the *pro se* Complaint of Plaintiff Mechor Jayme ("Plaintiff") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant the motion to dismiss.

**I.      BACKGROUND**

      Plaintiff purchased telephone services from Defendant MCI at all times relevant to this case. (Compl. ¶ 9.) The parties' relationship is governed by the terms and conditions set forth in the MCI Metro New Jersey Board of Public Utilities Tariff Number 4 (the "Tariff"). (Certificate of Keith L. Hovey, Ex. B at 18.) The services provided to Plaintiff initially included the "caller ID with name and number" service. (Compl. ¶ 9.) According to Plaintiff, on March 19, 2006, the

caller ID service was terminated for all MCI customers. (Id. ¶ 10.) Plaintiff then contacted the Defendants several times to discuss the loss of the caller ID service. (Id. ¶¶ 10, 13, 14.) In one instance, Plaintiff spoke with Defendant Andrea Busch, an employee of MCI, on the telephone. (Id. ¶¶ 14-15.) Plaintiff alleges that "Ms. Busch asked Plaintiff questions about the ID: 'is the light blinking, is it plugged to an outlet, etc.' which plaintiff could not answer. Plaintiff [then] informed defendant Busch that he is an illiterate on appliances." (Id. ¶ 15.) Plaintiff further alleges that Defendant Busch "banged the phone while Plaintiff was still talking" and that "Plaintiff was humiliated like a slap on the face!" (Id.) On May 19, 2006, the caller ID resumed working. (Id. ¶ 16.)

On January 5, 2007, Plaintiff filed a Complaint asserting three causes of action. The first cause of action is breach of contract. The second and third cite the "New Jersey Torts Claim Law" and are essentially a single claim for intentional infliction of emotional distress. (Id. ¶¶ 18-20.) Plaintiff alleges he is entitled to damages in the amount of $320,000. He requests $30,000 in "personal damages," $30,000 in "moral damages" and $100,000 in "punitive/exemplary damages" for the alleged breach of contract. (Id. ¶ 28.) Plaintiff also seeks $30,000 in "personal damages," $30,000 in "moral damages" and $100,000 in "punitive/exemplary damages" for Defendant Busch's alleged infliction of emotional distress. (Id.)

On August 16, 2007, Defendants filed the present Motion to Dismiss the Complaint, arguing that the Court does not have subject matter jurisdiction because no question of federal law is involved and because Plaintiff has failed to satisfy the $75,000 amount in controversy requirement for diversity jurisdiction. The motion was originally returnable September 17, 2007. In lieu of responding to the Motion to Dismiss, the *pro se* Plaintiff submitted a request for the

"laws and cases" relied upon in Defendants' motion, citing the language of Federal Rule of Civil Procedure 26 which states that "[a]ny party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter." Fed. R. Civ. P. 26(b)(3)(C). Plaintiff also requested a 30 day extension to file an opposition to the motion. In a Letter Order dated September 12, 2007, the Court explained to Plaintiff that "Federal Rule of Civil Procedure 26 does not require [his] adversaries to provide [him] with copies of the statutes and cases that [they] reference" in their motion. The Court granted Plaintiff an extension to file an opposition to the motion until October 12, 2007.

On October 10, 2007, Plaintiff filed a motion for reconsideration of the Court's denial of his previous "motion to submit laws and cases." The Court denied the request in a Letter Order dated October 26, 2007, explaining to Plaintiff that he did not demonstrate an "intervening change in the controlling law, the availability of new evidence, or a clear error of law or fact." The Court again explained to Plaintiff that "Federal Rule of Civil Procedure 26 does not require [his] adversaries to provide [him] with copies of the statutes and cases that [they] reference." The Court granted Plaintiff a further extension to file an opposition to the Motion to Dismiss, explaining to Plaintiff that it was his "final extension."

On November 16, 2007, Plaintiff filed a "motion to set aside" the Court's prior orders as "null and void," asserting that "the Honorable Court . . . is betraying his oath of office," and asserting once again that he is entitled to the "laws and cases" relied upon by Defendants under Federal Rule of Civil Procedure 26. In a Letter Order dated November 19, 2007, the Court stated that it was "well aware of [Plaintiff's] *pro se* status and [his] lack of knowledge concerning legal procedure," but that "Federal Rule of Civil Procedure 26 does not require [his] adversaries to

3

provide [him] with copies of the statutes and cases that [they] reference" in their motion.  As a final courtesy, the Court extended the time for Plaintiff to file an opposition to the Motion to Dismiss until December 3, 2007.  The Letter Order stated: "[t]o be clear, the Court will not entertain any further extension of the briefing schedule."

On December 18, 2007, Plaintiff filed yet another request to set aside the Court's prior orders as "null and void."  For the fourth time, the *pro se* Plaintiff asserted that he is entitled to the "laws and cases" relied upon by Defendants pursuant to Rule 26.  It has now been more than six months since the Motion to Dismiss was filed and Plaintiff has not responded to the Motion to Dismiss.  Instead Plaintiff has filed frivolous and repetitive motions.  The Court will now address Defendants' Motion to Dismiss.

## II.     DISCUSSION

### A.      Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's "authority or competence to hear and decide the case before it."  5B Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1350 (3d ed. 2004).  In the absence of subject matter jurisdiction, this Court is without power to hear the case.  See Cohen v. Kurtzman, 45 F. Supp. 2d 423, 429 (D.N.J. 1999).  The party asserting jurisdiction bears the burden of demonstrating in the record that jurisdiction is proper.  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the Court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact.  Turicentro, S.A.

v. Am. Airlines Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002). When a Rule 12(b)(1) motion facially attacks the complaint, the Court must take all allegations in the complaint as true. Id. at 300 n.4. However, when the motion attacks the Court's subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and "the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings." Id.

### B. Federal Question Jurisdiction

Defendants argue that "[e]ven assuming the allegations in the Complaint are true, both claims are state common-law claims and do not require the interpretation of federal law." (Def. Br. at 2.) The Court agrees. For purposes of federal question jurisdiction, "[a]n action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974). Here, Plaintiff's contract claim "is purely one as to the correct interpretation and effect of certain contractual documents . . . to be determined by the application of the principles of [state] contract law." Id. at 1369. Plaintiff's claim for infliction of emotional distress is similarly a matter of state law. See Farmer v. United Broth. of Carpenters and Joiners of Am., Local 25, 430 U.S. 290, 303 (1977) (recognizing intentional infliction of emotional distress as a state cause of action); Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988) (same). Accordingly, the Court lacks federal question jurisdiction over Plaintiff's claims.

### C.   Diversity Jurisdiction - Amount in Controversy

Defendants further argue that "plaintiff cannot establish the jurisdictional amount of $75,000" required for diversity jurisdiction. (Def. Br. at 9.)  Where, as here, a party challenges the existence of diversity jurisdiction based on the amount in controversy requirement, "[t]he amount need not be proven; rather, the amount is judged from the face of the complaint and is generally established by a good faith allegation." Golden ex rel. Golden v. Golden, 382 F.3d 348, 354 (3d Cir. 2004).  "Good faith" is measured by whether it appears to "a legal certainty that the claim is really for less than the jurisdictional amount." Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961) (citation omitted); see also Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) (noting that good faith is entwined with the legal certainty test in the context of removal of an action from state court).  The question of whether there is a legal certainty that claims are for less than the jurisdictional amount "depends on what damages [Plaintiff] could conceivably recover under New Jersey state law." Suber v. Chrysler Corp, 104 F.3d 578, 584 (3d Cir. 1997).

Plaintiff has the burden to show that jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). "Where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims." Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1989).  Also, "the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention." Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police, 920

F.2d 198, 200 (3d Cir. 1990).[1]

### 1.     Breach of Contract

Plaintiff alleges that he is entitled to $30,000 in "personal damages," $30,000 in "moral damages" and $100,000 in "punitive/exemplary damages" on his breach of contract claim. (Compl. ¶ 28.)  Defendants counter that MCI's liability is limited by the Tariff. (Defs' Br. at 13.) This constitutes a factual challenge to the Court's diversity jurisdiction and the Court may consider evidence extraneous to the Complaint, such as the Tariff, to determine whether diversity jurisdiction exists.  See Turicentro, 303 F.3d at 300 n.4.[2]

Under New Jersey law, "[i]t is well established that a tariff required by law to be filed by a telephone company is not a mere contract; it is the law."  Essex County Welfare Bd. v. New Jersey Bell Tel. Co., 315 A.2d 40,  42 (N.J. Super. Ct. App. Div. 1974).  Therefore subscribers are charged with constructive knowledge of the controlling tariff and are bound by it whether or not they are aware of its provisions.  Id.

Upon review of the Tariff in this case, it is evident that Plaintiff cannot support the damages allegedly related to his breach of a contract claim. Section 2.1.4.1 of the Tariff provides:

> The liability of the Company[3] for damages arising out of the furnishing of its services, including but not limited to mistakes, omissions, interruptions, delays, or errors, other defects, or representations by the Company, or use of these services or damages arising out of the failure to furnish the service

---

[1] Here, the Motion to Dismiss was filed on August 16, 2007.  Plaintiff had more than six months to present evidence in support of his jurisdictional contention but failed to do so.

[2] Plaintiff does not dispute that Exhibit 2 to the Certificate of Keith L. Hovey (hereinafter "Tariff") is an accurate copy of the controlling tariff.

[3] "Company" refers to Defendant MCI. Plaintiff has not presented any evidence of a contract between himself and Gerald Catz or Andrea Busch.

> whether caused by acts or omission, shall be limited to the extension of allowances for interruption as set forth in Section 2.6, below. The Company will not be liable for any direct, indirect, incidental, special, consequential, exemplary or punitive damages to Customer as a result of any Company service, equipment or facilities, or the acts or omissions or negligence of the Company's employees or agents.

(Tariff at 18.) Section 2.6.1 further provides, in relevant part:

> When the use of service or facilities furnished by the Company is interrupted due to any cause other than the negligence or willful act of the Customer, or the operation or failure of the facilities or equipment provided by the Customer, a pro rata adjustment of the monthly Recurring Charges subject to interruption will be allowed for the service and facilities rendered useless and inoperative by reason of the interruption whenever said interruption continues for a period of 24 hours or more. . . from the time the interruption is reported to or known to exist by the Company, except as otherwise specified in the Company's tariffs.

(Tariff at 42.) Section 2.1.4.9 provides, in relevant part:

> The entire liability of the Company for any claim, loss, damage or expense from any cause whatsoever shall in no event exceed sums actually paid to the Company by the Customer for the specific services giving rise to the claim.

(Tariff at 21.)

Plaintiff alleges that his "caller ID with name and number" service was inoperative for two months, from March 19, 2006 until May 19, 2006. The "Service Summary" attached to the Complaint indicates that the caller ID service is part of a package of services called "Neighborhood Connect 500," the cost of which is $39.99 per month. Under the terms of the Tariff, Plaintiff is entitled, at most, to an adjustment of approximately $80.00 for the service interruption. The other damages alleged by Plaintiff for breach of contract are expressly barred by the Tariff.

## 2. Tort Claims

Plaintiff alleges that Defendant Busch maliciously and intentionally caused him emotional distress by failing to reconnect the caller ID service. (Compl. ¶ 26.) Plaintiff further alleges that Defendant Busch "used an irritating tense voice" on the phone with him, "banged the phone while Plaintiff was still talking," that Plaintiff was "emotionally jarred," and that he "was humiliated like a slap on the face." (Id. ¶ 15, 26.) Plaintiff also claims that "[a]s a result of Defendant Busch's insult, Plaintiff's heart immediately palpitated uncontrollably," and that he "immediately took the heart medicines and laid down the whole night" and his heart beat "became regular during the night's sleep." (Id. ¶ 26.) Plaintiff further alleges that he "suffered in agony, frustration and despair every day of the whole sixty one (61) days the 'I.D.' was disconnected." (Id.) Plaintiff adds that "[w]hen the caller ID was arbitrarily cutoff, Plaintiff was in complete distress and very lonely: day to day! A punishment unnecessarily caused by the defendants and malicious prolonged!" (Id.)

Plaintiff requests $30,000 in "personal damages," $30,000 in "moral damages" and $100,000 in "punitive/exemplary damages" for Defendants' infliction of emotional distress. (Id. ¶ 28.) Plaintiff requests punitive damages because "all the technicians in all the U.S.A. will be laid off" and "they will lose their income and their families will be displaced," and because all the customers will become "psychopaths." (Id.) Plaintiff concludes that MCI's termination of the caller ID service will cause MCI's customers' and employees' "quest for happiness" to be "aborted" and cause "the flames of liberty [to be] smothered!" (Id. ¶ 26.)

Defendants argue that Plaintiff "fails to assert a claim for emotional distress because his claim is not viable as a matter of law." (Def. Br. at 17.) The Court agrees.

9

A district court can grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of a claim only when the claim "'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or. . . is wholly insubstantial and frivolous.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-1409 (3d Cir. 1991) (citations omitted).  The Court concludes that Plaintiff's claim for infliction of emotional distress is wholly insubstantial and frivolous.  Under New Jersey law, a claim for intentional infliction of emotional distress must allege conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988) (citations omitted).  Plaintiff's claims are insufficient to meet this standard. See Bishop v. Inacom, Inc., No. 99-664 (JBS), 1999 WL 1416919, at *9 (D.N.J. Dec. 1, 1999) (dismissing intentional infliction of emotional distress claim for failure to allege sufficiently outrageous conduct where complaint alleged, among other things, that defendant was rude to plaintiff and  made degrading comments about her).

For the foregoing reasons, the Court concludes to a legal certainty that Plaintiff's claims are really for less than the $75,000 jurisdictional amount.

**III.    Conclusion**

The Court concludes that it lacks subject matter jurisdiction over all claims and dismisses the Complaint without prejudice.  Plaintiff remains free to pursue his claims in state court.

Dated: February 21, 2008

                                                                          s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.